J-S02044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: J.H., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2083 EDA 2024 |

Appeal from the Order Entered July 10, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000031-2023

| IN THE INTEREST OF: B.B.H., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2084 EDA 2024 |

Appeal from the Decree Entered July 10, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000459-2023

BEFORE:  LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MARCH 3, 2025**

S.H. ("Mother") appeals from the decree involuntarily terminating her parental rights to J.H. ("J.H." or "Child") and the order changing Child's permanency goal to adoption.[1] We affirm the termination decree and dismiss the goal-change appeal as moot.

———————————————————

[1] The caption for the goal change action lists Child's initials as B.B.H., that is "Baby Boy" H.

Child was born in July 2022 and tested positive for cocaine and fentanyl at birth. Child was transferred to St. Christopher's Hospital for Children's neonatal intensive care unit. Mother left the hospital and her whereabouts were unknown. In January 2023, the Philadelphia Department of Human Services ("DHS") obtained an order of protective custody ("OPC"), and Child was placed in a foster home. In February 2023, the court held an adjudicatory hearing, which Mother attended. The court adjudicated Child dependent.

In November 2023, DHS filed a petition to involuntarily terminate Mother's parental rights and a petition to change the goal to adoption. The court held a hearing in May 2024. The court accurately summarized the testimony as follows:

> DHS Case Manager, Tyee[sha] Grasty, . . . testified she has been supervising this case since November 30, 2022, and was assigned to the case in August 2023. Ms. Grasty testified she is intimately familiar with the case and reviewed the case records prior to the hearing. Ms. Grasty testified the case became known to DHS based on a GPS report in July of 2022 for substance abuse by Mother with positive testing for cocaine, opiates, and fentanyl at the time of J.H.'s birth; J.H. was positive for cocaine and fentanyl at this time. The report also listed homelessness and abandonment for Mother.
>
> The GPS report was investigated and an OPC was subsequently obtained for J.H. on January 13, 2023, due to J.H. being abandoned by Mother as J.H. had been at the hospital since birth for his medical needs, was ready for discharge from the hospital, and Mother's whereabouts were unknown. Mother did not visit with J.H. during the six months he was in the hospital. J.H. was adjudicated dependent on February 9, 2023, due to abandonment and present inability to parent by Mother. Ms. Grasty testified Mother did not have appropriate housing at the time J.H.

was adjudicated dependent. Ms. Grasty testified J.H. was also fully committed to DHS and he remained in their care.

Ms. Grasty testified single case plan objectives were created for Mother on December 14, 2022, and those objectives are still substantially the same to this day. Ms. Grasty testified Mother's single case plans were to make her whereabouts known to [the Community Umbrella Agency]; submit herself for [clinical evaluation unit ("CEU")] assessment once she avails herself; to sign releases for her and J.H.; and to attend supervised visits at the agency. Ms. Grasty testified Mother did not attend the single case plan meeting as the phone number they had for her was no longer in service. However, the single case plan objectives were mailed out to Mother.

Ms. Grasty testified Mother has had minimal compliance with the single case plan objectives throughout the life of the case. Ms. Grasty testified she had no contact with Mother from December 2022 through January 2024. During that time period, Mother did not sign any consents. Mother did have two drug screens, one on February 9, 2023, and another other on May 11, 2023, and the results were positive for both. Mother did not have any supervised visits with J.H. from December 2022 to January 2024. Ms. Grasty testified Mother had no compliance with her single case plan objectives and no progress toward reunification with J.H. during that time period.

Ms. Grasty testified that in January 2024, she contacted Mother after receiving information Mother was staying at [Child's] maternal grandmother's home in Minnesota. Mother indicated to Ms. Grasty that she was living in Minnesota since December of 2023. Ms. Grasty testified maternal grandmother told her the house was not appropriate for [Child] and she was not able to care for him.

At this time in January 2024, Ms. Grasty went over the single case plan objectives with Mother. Mother provided Ms. Grasty with some urine results from a clinic, but Ms. Grasty testified she could not say what the clinic is for as Mother still has not signed any releases for her to get information. Ms. Grasty testified Mother did start contacting her on a weekly basis in January 2024 and weekly virtual visits between Mother and J.H. began on January 25, 2024.

- 3 -

According to Ms. Grasty, the visits went as best they could with them being virtual. Ms. Grasty testified that out of fourteen scheduled virtual visits, Mother missed five of them. Ms. Grasty also testified Mother ha[d] been back close to the Philadelphia area since January 2024, but did not make any attempts to visit J.H. in person.

Mother testified at the hearing she is trying to complete her single case plan objectives. Mother testified she has been clean of all illicit drugs since December 2023. Mother stated she is not attending any meetings but is in a suboxone program which she started in January 2024. She was prescribed melatonin, gabapentin, and prozac that have been able to keep her off the illicit drugs. Mother testified she is doing a 30-day course to try to get a job with an insurance company. Since December 2023, Mother has resided with maternal grandmother who has custody of one of Mother's other children. Mother further testified she has been having weekly virtual visits with [Child] since January 2024 and she tries to do as much as she could with [Child] in these virtual visits. Mother testified she did not ask Ms. Grasty or anyone else if she could visit with [Child] in person when she was in the area because she was unaware she could do so. Mother testified she is working on getting her life back together and staying sober.

Trial Ct. Op., filed Oct. 17, 2024, at 10-13 (internal citations omitted).

In July 2024, the trial court terminated Mother's parental rights under Sections 2511(a)(1), (2), (5) and (8) and Section 2511(b). That same day it changed Child's permanency goal to adoption. Mother filed notices of appeal of the decree terminating her parental rights and the order changing the goal.

Mother raises the following issues:

1. Did the trial court err as a matter of law or abuse[] its discretion where it determined that the requirements of 23 Pa.C.S.A. [§] 2511(a) to terminate [Mother's] parental rights were met[?]

2. Did the trial court err as a matter of law or abuse[] its discretion where it determined the requirements of 23 Pa.C.S.A. [§] 2511(b) were met[?]

3. Did the trial court err as a matter of law or abuse its discretion where it determined that the permanency goal for J.H. should be changed to adoption[?]

Mother's Br. at 3.

In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under this

provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the court found termination proper under subsections 2511(a)(1), (2), (5), and (8), as well as under Section 2511(b). As only one basis for termination under Section 2511(a) is necessary, we will focus on the court's termination of Mother's parental rights under subsection 2511(a)(1). That subsection provides that a parent's rights to a child may be terminated if:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Pursuant to subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to

relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008). A parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the development of the child." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted). Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Mother argues DHS did not prove termination was proper under Section 2511(a) because she testified that although she had a longstanding drug problem, at the time of the hearing she had been sober for "a number of months." Mother's Br. at 8. She claims the court should have considered this and provided her with more time. She pointed out that she called the caseworker, attended the virtual visits and tried to engage Child, and took affirmative steps to put herself in a position to parent Child. She maintains she never evinced a settled purpose to relinquish her parental rights.

The court found Grasty credible and noted that Mother had no contact with J.H. until January 2024, missed five of the 14 virtual visits offered, had

- 7 -

not completed her single case plan objectives, and her drug-free status could not be confirmed:

> This [c]ourt found Ms. Grasty's testimony was credible throughout the hearing. DHS has been involved with J.H. since birth as he tested positive for cocaine and fentanyl. J.H. was in the hospital for six months after birth due to his medical needs. Mother did not visit with J.H. at all during those six months. J.H. was adjudicated dependent on February 9, 2023. The single case plan objectives were established and sent to Mother. The objectives remained consistent throughout the life of the case. Ms. Grasty testified Mother had no compliance with her single case plan objectives and no progress toward reunification with J.H. from December 2022 until January 2024. Ms. Grasty did not even have any contact with Mother during that time period. Mother had two drug screens during that time and they were positive for controlled substances. Mother also did not have any visits with J.H. during the time period of December 2022 until January 2024.
>
> Ms. Grasty finally made contact with Mother in January 2024 and learned Mother was residing with maternal grandmother in Minnesota but the home was not appropriate for J.H. Ms. Grasty testified all of Mother's single case plan objectives are still outstanding. While Mother did provide some urine results from a clinic nothing could be confirmed as Mother never signed releases or consents for her treatment at this clinic. Virtual visits did begin with Mother and J.H. in January 2024. Both Ms. Grasty and Mother testified the visits go the best they can with them being virtual. Mother missed five of the fourteen virtual visits she had scheduled since January 2024. Mother was also in the area at one point during that time but made no request to visit with J.H. in person.
>
> Mother testified about how she is working on her sobriety and getting a job. However, outside of her suboxone program, Mother is not receiving any additional services to stay sober. The Court also does not have any evidence to support that Mother is sober. Mother's drug issue is one of the main concerns as J.H. was positive for controlled substances at birth which has led to J.H.'s extensive medical

needs. While Mother may have made some efforts recently and loves J.H., the Court found Mother has not met her single case plan objectives in a timely fashion. The Court also had to take into consideration the permanency of J.H.

Based on these reasons, the Court found DHS met its burden by clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §[]2511 (a) (1) . . .

Trial Ct. Op. at 13-14 (internal citations omitted).

The record supports the trial court's findings and it did not abuse its discretion when it found termination proper under Section 2511(a). Mother evidenced a settled purpose of relinquishing parental claim to Child and failed to perform parental duties. She had no contact with Child until January 2024, and only minimal contact after, she did not complete her single case plan objectives, and, although Mother testified she was sober, she provided no verifiable proof of her sobriety.

Mother next contends termination was not proper under Section 2511(b). She points to Grasty's testimony that Mother attended video visits with Child, sang nursery rhymes, and brought toys to engage him. She maintains that she is trying to build a bond, and is requesting that the court provide her more time to do so. She argues she is sober and loves her son.

Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284,

1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.* The court must also examine any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d at 268.

The trial court found termination proper under Section 2511(b) reasoning, in part, that Child did not have a bond with Mother but had a parental bond with his foster mother H.W. ("Foster Mother"):

> In regard to 2511(b) and the best interest of J.H., Ms. Grasty testified J.H. has been placed through the agency A Better Chance For Our Children in Wilmington, Delaware. It is a medical kinship home and is pre-adoptive. Ms. Grasty has observed the visits between J.H. and his current foster caregiver, [Foster Mother]. Ms. Grasty testified J.H. and [Foster Mother] share a parent-child bond together. J.H. has been with [Foster Mother] since August 5, 2023, and [Foster Mother] takes care of his medical and emotional needs. [Foster Mother] also provides J.H. with daily care and comfort. J.H. has certain medical needs and [Foster Mother] takes him to all of his medical appointments. Ms. Grasty expressed no concerns in regard to J.H.'s safety and [Foster Mother's] ability to care for J.H.
>
> The Court found credible the testimony from Ms. Grasty that a parent-child bond does not exist between Mother and J.H. Ms. Grasty testified she does not believe there is a bond between Mother and J.H. J.H. does not look to Mother for his medical and emotional needs. J.H. does not recognize her as his Mother.
>
> Ms. Grasty testified termination of Mother's parental rights would not have a detrimental effect or cause any irreparable harm on the developmental, physical and emotional needs of J.H. Ms. Grasty further testified that it is in J.H.'s best interest to be freed for adoption. This was based on Mother's whereabouts being unknown for a majority of J.H.'s life and that J.H. looks to [Foster Mother]

for his daily needs to be met and has a very strong bond with her.

The [c]ourt found that there is no parental bond between Mother and J.H. based on the testimony of Ms. Grasty. The [c]ourt has also seen [Foster Mother] and J.H. at every court hearing. The [c]ourt notes and finds that J.H. is well taken care of by [Foster Mother] especially with J.H.'s particular and extensive medical needs. The [c]ourt found it is in the best interest of J.H. to be freed for adoption. Based on the above testimony and evidence presented, the [c]ourt found clear and convincing evidence as to 23 Pa.C.S.A. § 2511(b) and that termination of Mother's parental rights would be in the best interest of the child pursuant to 23 Pa.C.S.A. § 2511(b).

Trial Ct. Op. at 14-15 (internal citations omitted).

The record supports the trial court's factual findings, and it did not abuse its discretion in finding termination would best support Child's physical, mental, and emotional needs. Child does not have a parental bond with Mother, and has a strong bond with Foster Mother, whom he looks to to meet his needs.

In her final issue, Mother argues the court erred in changing Child's permanency goal to adoption. Because we affirm the termination decree, the appeal from the goal-change order is moot. *See Int. of A.M.*, 256 A.3d 1263, 1272-73 (Pa.Super. 2021) (finding challenge to goal change moot in light of termination of parental rights). We therefore dismiss the appeal from the goal change order.

Decree affirmed. Appeal from order changing goal to adoption dismissed.

President Judge Lazarus joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2025